IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | No. CR 10-2880-TUC-DCB (CRP) |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **SHIRLEY ANNE MORGAN,** | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant brings two motions before this Court; a Motion to Suppress Evidence and a Motion to Suppress Statements. (Docs. 37, 38). In her Motion to Suppress Evidence, Defendant argues Border Patrol agents violated her constitutional rights by searching her vehicle pursuant to a border search at the San Miguel Gate as this Gate is not an official port of entry into the United States. Defendant further contends Border Patrol agents also lacked reasonable suspicion to search her vehicle. The Government contests the Motion, arguing Border Patrol can initiate a border search at this Gate, and alternatively, the agents had reasonable suspicion to search Defendant's vehicle. (Doc. 40).

In her Motion to Suppress Statements, Defendant argues she did not knowingly, voluntarily, and intelligently waive her *Miranda* rights before making an incriminating

statement as the waiver form she signed included warnings about civil and administrative proceedings and was therefore confusing. The Government contests this Motion as well, arguing Defendant knowingly waived her rights and her statement was voluntary. (Doc. 41).

The Government also filed a Motion to Preclude Expert Witness Testimony at the evidentiary hearing. (Doc. 45). The Government contends Defendant's proposed expert witness testimony on the history of the San Miguel Gate is not relevant and that Defendant failed to provide the proper notice to the Government regarding the use of an expert witness. The Court held an evidentiary hearing on May 11, 2011. (Doc. 50). The transcript of this evidentiary hearing is in the docket. (Doc. 56).

**Factual Findings**

The San Miguel Gate is located south of Sells, Arizona on the Tohono O'odham Nation and is positioned directly on the international border separating the United States and Mexico. (Doc. 56, Transcript from the May 11, 2011 evidentiary hearing "TR" at 99). The Gate exists solely for the use of Tohono O'odham members so they may cross the international boundary as their Nation spans across Southern Arizona into Mexico.

A border fence stretches from either side of the San Miguel Gate. Border Patrol Agent Charles Armour described this fence as a "bollard barrier", a combination of steel and concrete posts spaced out to prevent vehicles from crossing the border. (TR at 14). At some point the bollard barrier transitions to a Normandy barrier. (TR at 18). To Agent Armour's knowledge, the border fence runs continuously from Sasabe to Lukeville, the two official ports of entry in the surrounding area. (TR at 18).

The San Miguel Gate is a 20 to 30 foot gap in the bollard barrier. (TR at 15). A large swing gate allows the Gate to be closed if necessary. On the United States side of the Gate, a metal awning shades Border Patrol agents from the sun while they are monitoring the Gate. Border Patrol monitors the Gate seven days a week, 24 hours a day. (TR at 18). Border Patrol requires Tohono O'odham members to show their tribal ID to pass through the Gate. (TR at 19). All vehicles are stopped when crossing through the Gate. Agent Armour estimated that one in three vehicles passing through the Gate is searched. (TR at 20). Agent

1 Armour further estimated that in his almost five years with Border Patrol, while working the
2 San Miguel Gate approximately once every two weeks, he has discovered approximately 20
3 vehicles transporting illegal narcotics. (TR at 10, 13, 22).

4       On October 9, 2010, Agent Armour was inspecting vehicles as they passed through
5 the San Miguel Gate. (TR at 23). During this busy Saturday, Defendant's vehicle was one
6 of three or four vehicles that approached the San Miguel Gate at the same time. In Agent
7 Armour's experience, drug traffickers will often try to pass a load of narcotics through the
8 San Miguel Gate by sending multiple vehicles through the Gate at the same time so as to
9 distract the attention of the one to two Border Patrol agents who are working at the Gate.

10       Agent Armour testified that when Defendant's vehicle drove through the Gate, he was
11 immediately suspicious of it. He was first suspicious because the vehicle approached the
12 Gate with a group of three or four cars. He next noticed that Defendant's vehicle did not
13 have any personal belongings. Upon talking to Defendant he learned her vehicle was
14 registered to a street address in Sells, Arizona. Agent Armour found this information
15 suspicious because in his experience there are very few vehicles registered to street addresses
16 in Sells. Most often the addresses are P.O. boxes and street addresses are fictitious. (TR at
17 29). Further supporting Agent Armour's suspicion about a possible fictitious address, his
18 radio personnel informed him that a check of the person to whom the vehicle was registered
19 was missing critical identifying information such as height, weight, and a social security
20 number. In Agent Armour's experience, missing critical information is common when a
21 fictitious person is used to register a car. (TR at 29). After Agent Armour ran the vehicle
22 and registration check, he began searching Defendant's vehicle. In his search, he discovered
23 bundles of marijuana in a large speaker box in the trunk of her vehicle. (TR at 31-32).

24       At this point, Agent Armour *Mirandized* Defendant and began to question her. (TR
25 at 35). Agent Armour could not remember if he read Defendant her *Miranda* rights or recited
26 them from memory. Agent Armour's advisement of *Miranda* rights card does include a
27 warning that Defendant's statements can be used against her in an immigration or
28 administrative proceeding. This warning is in addition to the warning that statements can be

1  used against the defendant in court. (TR at 36). Agent Armour's verbal warning does not
2  include a warning about using a defendant's statements in immigration or administrative
3  proceedings. (TR at 37).

4  After Defendant was *Mirandized*, she answered a few questions. Based on her
5  answers, Agent Armour told Defendant that he believed she was lying. (TR at 38).
6  Defendant then invoked her right to counsel and Agent Armour ceased questioning. (TR at
7  38). Agents subsequently transported Defendant and the marijuana to the Casa Grande
8  Border Patrol processing center approximately two and half hours away.

9  Once at the processing center, agents worked on processing the marijuana and ran
10 Defendant's fingerprints through IAFIS, a computer identification program. (TR at 39). The
11 fingerprint searched revealed Defendant was recently arrested for smuggling narcotics. (TR
12 at 39). At the evidentiary hearing, Border Patrol Agent Brent Pons testified that while he was
13 working at the San Miguel Gate on September 22, 2010, Defendant was discovered driving
14 a vehicle with illegal narcotics in it. (TR at 100-101). Defendant was advised of her
15 *Miranda* rights by an agent on the scene who read Defendant her rights from a Border Patrol
16 advisement of rights card. (TR at 102-104). Defendant then invoked her right to remain
17 silent and did not answer any further questions. (TR at 104).

18 Continuing to process Defendant in the current case, Agent Armour re-advised
19 Defendant of her *Miranda* rights. Agent Armour testified that he readvised Defendant so he
20 could complete Border Patrol's I-214 advisement of rights form. (TR at 40). This I-214
21 advisement of rights form advises a defendant that her statements can be used against her in
22 court as well as in an immigration or administrative hearing. (TR 43). Agent Armour had
23 Defendant complete the advisement of rights form while she was standing in close proximity
24 to the bundles of marijuana that were laid out for processing. Agent Armour stated
25 Defendant was brought out to where the marijuana was located because Agent Armour
26 needed to watch the marijuana while he completed Defendant's processing. (TR 41-42).

27 Agent Armour stated that when Defendant looked at the bundles she told Agent
28 Armour that she wanted to talk to him. Agent Armour told her he could not talk with her as

she had invoked her right to an attorney. (TR at 41). Defendant again stated she wanted to talk with the agent and that she would waive her right to counsel. (TR at 46). Agent Armour showed Defendant the waiver of rights at the bottom of the advisement of rights form and Defendant signed the waiver. She then gave an incriminating statement. (TR at 45-47).

At the evidentiary hearing, the Court noted that in one of the photographs Defendant is pictured with the marijuana directly in front of her. (TR at 84-85, Exhibit 13). When asked why she was photographed with the marijuana, Agent Armour testified that the photograph was taken to place on the outside of Defendant's detention cell so agents could identify who was in the cell. Agent Armour could not explain why Defendant was photographed with the marijuana specifically. No evidence was presented as to whether Defendant was photographed with the marijuana before or after she told Agent Armour that she wished to waive her right to an attorney and make a statement.

Defendant called one witness at the evidentiary hearing. Mr. Bernard George Siquieros testified as to the history and use of the San Miguel Gate. Prior to the evidentiary hearing and also at the hearing, the prosecution objected to this witness. The Court took the Government's objection and motion to preclude the witness under advisement.

Mr. Siquieros is employed by the Tohono O'odham Nation as the curator of education for the Cultural Center Museum. (TR at 109). Mr. Siquieros provided this Court with some previously unknown history on the creation of the San Miguel Gate but his testimony did not differ greatly from Border Patrol agents testimony regarding the Gate's current use. All agree the San Miguel Gate is now monitored by Border Patrol 24 hours a day, seven days a week, that the Gate sits on the international boundary between Mexico and the United States, and that only Tohono O'odham Nation members are allowed to pass through it and may do so by showing their Tohono O'odham member ID.

**Motion to Suppress Evidence**

At issue in the Motion to Suppress Evidence is whether Border Patrol can conduct a border search, requiring no suspicion of criminal activity, at the San Miguel Gate. The Court concludes it can. The mere entry into the United States from a foreign country provides

sufficient justification for a border search. *Klein v. United States*, 472 F.2d 847, 849 (9th Cir.1973) (internal citation omitted). "Consistent with the right of a sovereign to protect itself, travelers entering the country may be required to identify themselves, show their entitlement to come in, and identify their belongings as lawfully admissible." *United States v. Alfonso*, 759 F.2d 728, 733 (9th Cir.1985) (internal citations omitted). Border searches are by their very nature reasonable under the Fourth Amendment, and require neither a warrant, probable cause, nor even articulable suspicion. *Alfonso*, 759 F.2d at 733-734 (internal citations omitted). Searches at the border or the functional equivalent of the border require that law enforcement possess a "reasonable certainty" that a border has been crossed, either by the vehicle in question, or by contraband suspected within the vehicle. *United States v. Guzman-Padilla*, 573 F.3d 865, 878 (9th Cir.2009).

Defendant argues the San Miguel Gate is not an official port of entry and therefore, Border Patrol does not have the authority to conduct a border search at the Gate. The Court disagrees. The cases discussing border searches do not define the legality of the search by considering whether the search was conducted at an official port of entry. Rather, government agents must possess a reasonable certainty that a border has been crossed. Courts note the United States has a right to protect itself and this right includes inspecting the identity and belongings of travelers entering the country.

In this case, there is no question that Defendant crossed the international boundary from Mexico into the United States. The San Miguel Gate provides an entry into the United States. It is monitored by Border Patrol twenty-four hours a day, seven days a week and every vehicle that passes through the Gate is routinely checked by a Border Patrol agent. Agent Armour was monitoring the Gate when Defendant crossed into the United States and he had the right to search Defendant's vehicle pursuant to a border search. The Magistrate Judge recommends the District Judge deny Defendant's motion to suppress evidence.

The Court will not address the Government's assertion that Agent Armour had reasonable suspicion to search Defendant's vehicle as the Court finds this was a border search.

**Motion to Suppress Statements**

Defendant argues her waiver of *Miranda* rights was defective because the warnings she received included warnings that her statements could be used in immigration and administrative proceedings as well as in court. A waiver of *Miranda* rights must be "made voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). If the totality of circumstances reveal both an "uncoerced choice" by a defendant to give a statement and "the requisite level of comprehension" to waive *Miranda* rights, the court may conclude that the defendant has validly waived his *Miranda* rights. *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal citations omitted). "Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant." *United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir.1986) (internal citations omitted). "The [relevant] inquiry is simply whether the warnings convey to a suspect his rights as required by *Miranda*." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (citation and internal quotation marks omitted). Altered warnings that convey the rights required by *Miranda* are sufficient. *Florida v. Powell*, 130 S.Ct. 1195 (2010) (Supreme Court found altered *Miranda* warnings reasonably conveyed rights to the defendant).

Border Patrol's addition in its advisement of rights of a warning to defendant that statements may be used in immigration or administrative context as well as in court does not invalidate the waiver. Defendant in this case was made aware multiple times of her *Miranda* rights. Defendant clearly understood those rights as she elected not to make an incriminating statement while in the field with Agent Armour and she invoked her right to an attorney. Further, the testimony showed Defendant had prior experience being read her *Miranda* rights and that on the prior occasion she understood her rights and invoked her right to remain silent. The evidence shows Defendant understood her rights and validly waived those rights.

At the conclusion of the evidentiary hearing, defense counsel expanded the motion to suppress statements arguing Border Patrol agents reinitiated interrogation and thus, violated Defendant's *Miranda* rights by not respecting her request for counsel. Defense

counsel argued two actions by Border Patrol agents reinitiated interrogation. First, Border Patrol agents requested Defendant sign the I-214 advisement of rights form and second they photographed Defendant with the marijuana. Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). A defendant who has invoked her right to counsel cannot be subjected to further interrogation until counsel has been made available, unless the defendant initiates further communication. *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981).

The Court finds Border Patrol agents' request that Defendant sign the I-214 advisement of rights form was not an interrogation. Agent Armour testified that he gave Defendant this form and asked that she sign it because, as part of processing, the agents request all suspects complete this form. Having Defendant complete the I-214 form was an action normally attendant to arrest and custody for the Border Patrol agents.

The photograph of Defendant with the marijuana is more disconcerting to this Court. As previously noted, Agent Armour testified the photograph was taken for identification purposes. Agent Armour, however, could not explain why Defendant was photographed with the marijuana specifically. Agent Armour testified it was necessary to photograph Defendant in the room where the marijuana was located because that room contained the computer with the camera and Agent Armour was responsible for watching the marijuana while he completed the processing of Defendant, which meant that he needed to process Defendant in the same room where the marijuana was being kept.

According to the testimony presented at the hearing, Defendant came into the room containing the marijuana, looked at the bundles marijuana, and then told Agent Armour that she wanted to tell him something. Agent Armour replied that she had invoked her right to an attorney and he could not speak with her. Defendant then told Agent Armour that she wanted to waive that right and make a statement. Agent Armour explained the waiver of rights and Defendant signed the waiver of rights form.

That the marijuana was in the same general area where Defendant was processed is to be expected and offers no support to an argument that agents reinitiated interrogation after Defendant invoked her right to counsel. A posed photograph of Defendant standing behind the stacked marijuana is a different thing entirely. The action was at best unprofessional. At worst, it could have been an attempt to use a display of overwhelming evidence to pressure Defendant to give up her rights. This issue was not briefed and the Court is unaware of any case in which such an incident, by itself, would sustain a finding that law enforcement's actions were outrageous or overbearing. Most importantly, no testimony established whether the photograph was posed and taken before or after Defendant waived her rights.

The Magistrate Judge recommends that the District Court deny Defendant's motion to suppress statements.

**Motion to Preclude Defendant's Expert Witness**

The Government seeks to preclude the testimony of defense witness Bernard Siquieros as not relevant and because the defense failed to timely notify the prosecution that it intended to call Mr. Siquieros.

Mr. Siquieros testified, in part, based on his position as curator of the Tohono O'odham Cultural Museum. Mr. Siquieros testified as to the creation of the San Miguel Gate and its purpose for the Tohono O'odham people. Mr. Siquieros also provided personal testimony on the changes to Border Patrol's monitoring of the Gate through the years he has lived in the Nation and crossed through the Gate to visit family or complete work in the part of the Nation located in Mexico.

The Magistrate Judge recommends that the District Court deny the Government's motion to preclude the testimony. Mr. Siquieros's testimony was relevant at the time of the evidentiary hearing as the Court had not yet resolved the issue of whether a border search could occur at the San Miguel Gate. The prosecution was not prejudiced by the Court allowing this testimony. And, ultimately, Mr. Siquieros's testimony about Border Patrol's monitoring of the Gate did not differ from Border Patrol agents' testimony and was not

critical to adjudicating the Motion.

**Recommendation**

For the reasons outlined above, the Magistrate Judge recommends that the District Court, after its independent review, DENY Defendant's Motion to Suppress Evidence, Motion to Suppress Statements. (Docs. 37, 38). The Magistrate Judge further recommends that the District Court deny the Government's Motion to Preclude Expert Witness Testimony at the Suppression Hearing. (Doc. 45).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR 10-2880-DCB**.

DATED this 6th day of July, 2011.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE